# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1700

GEORGE D. MURPHY, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 4, 2014)

*Kyle S. Fischer* of Columbus, Georgia, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *David L. Quinn*, Acting Assistant General Counsel; *Nisha C. Hall*, Deputy Assistant General Counsel; and *William L. Puchnick*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before MOORMAN, LANCE, and BARTLEY, *Judges*.

BARTLEY, *Judge*: Veteran George D. Murphy appeals through counsel a February 27, 2012, Board of Veterans' Appeals (Board) decision denying entitlement to an increased disability evaluation in excess of 10% for service-connected sinusitis. Record (R.) at 3-24.[1] This appeal is timely and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will reverse the Board's February 2012 denial of an increased evaluation for sinusitis in excess of 10% and remand that matter for reinstatement of the 30% evaluation and consideration of the issue the veteran appealed, entitlement to an evaluation in excess of 30% for sinusitis.

---

[1]The Board also denied entitlement to a disability evaluation in excess of 10% for service-connected hypertension. R. at 8-13. Because Mr. Murphy makes no argument with respect to that claim, the Court will not address it. *See DeLisio v. Shinseki*, 25 Vet.App. 45, 47 (2011) (Court's disposition of case addresses only those portions of the Board decision argued on appeal).

## I. FACTS

Mr. Murphy served on active duty in the U.S. Air Force from August 1953 to May 1984. R. at 95, 949, 1059, 2104, 2153, 2176, 2272. In July 1984, a VA regional office (RO) granted service connection for chronic sinusitis and assigned a 10% evaluation effective June 1, 1984, the date of his original claim. R. at 2111-12. He sought an increased evaluation for that condition in December 2000 (R. at 2097-99), which was denied by the RO in September 2001 (R. at 1817-26). The veteran did not appeal that decision and it became final.

In June 2003, Mr. Murphy filed another claim for an increased evaluation for sinusitis (R. at 1812-16), which was denied by the RO in May 2004 (R. at 1232-42). The veteran filed a timely Notice of Disagreement (NOD) as to that decision (R. at 1216-18) and subsequently perfected his appeal to the Board (R. at 965-71). In February 2010, the Board remanded his claim to provide a current VA medical examination to assess his sinusitis. R. at 422-49.

Mr. Murphy underwent that examination in December 2010 and reported a history of incapacitating episodes of sinusitis requiring four to six weeks of antibiotic treatment once per year and nonincapacitating episodes with headaches, fever, purulent drainage, and sinus pain three times per year. R. at 122. After performing a physical examination and recording the veteran's complaints, the examiner diagnosed chronic recurrent sinusitis with associated frequent sinus pain, pressure, infections, and headaches. R. at 123-24. The examiner opined that the veteran's condition prevented shopping, exercise, recreation, and traveling; severely impaired chores; moderately impaired feeding; mildly impaired grooming; and had no effect on bathing, dressing, or toileting. R. at 124.

On June 16, 2011, the VA Appeals Management Center (AMC) sent Mr. Murphy a June 10, 2011, Supplemental Statement of the Case (SSOC) increasing his sinusitis evaluation to 30%, effective June 20, 2003, the date of his claim for increase. R. at 87-92. The AMC cited the findings from the December 2010 VA examination and, "resolving reasonable doubt in [the veteran's] favor," determined that his "disability picture more nearly approximates the criteria for a 30[%] evaluation based on recurrent episodes, chronic pain, purulent drainage[,] and impact on daily activities." R. at 91. The AMC also informed Mr. Murphy that, "[g]iven the favorable resolution of this [claim] and [the] other issues on appeal," he was now entitled to a 100% combined disability evaluation. R. at 92. On July 1, 2011, the AMC sent the veteran a copy of a June 10, 2011, rating decision,

effectuating the increased evaluation for sinusitis. R. at 63-80. The July 1, 2011, cover letter mailed with that decision notified Mr. Murphy of his total VA monthly benefit amount, effective from July 1, 2003 (R. at 63-64) and attached VA Form 21-8764, Disability Compensation Award Attachment Important Information (R. at 66), which notifies veterans that they will begin to receive payment within 15 days–i.e., in Mr. Murphy's case, by July 16, 2011.

The appeal was subsequently returned to the Board because it was not a complete grant of the benefits the veteran was seeking, and, in February 2012, the Board issued the decision currently on appeal. R. at 3-24. Despite the AMC awarding Mr. Murphy a 30% evaluation for sinusitis in June 2011, the Board characterized the issue on appeal as "[e]ntitlement to an increase in a 10[%] rating for sinusitis." R. at 3. The Board reviewed the medical and lay evidence of record and determined that the veteran's sinusitis had not been treated with antibiotics for a prolonged period of four to six weeks, nor had it been manifested by more than six nonincapacitating episodes per year characterized by headaches, pain, and purulent discharge or crusting. R. at 14-18 (citing 38 C.F.R. § 4.97, Diagnostic Code (DC) 6513). The Board acknowledged that the evidence "reflect[ed] a 12-month time period between April 2008 and April 2009 wherein [he] was treated for sinus symptoms on six occasions," but explained that, on two of those occasions, his symptoms were diagnosed as allergic rhinitis, not chronic sinusitis. R. at 17-18. The Board therefore concluded, without discussing the SSOC or the AMC rating decision, that the veteran's chronic sinusitis did not more nearly approximate the criteria for a 30% evaluation and denied entitlement to an evaluation in excess of 10% for that condition. R. at 18. This appeal followed.

## II. ANALYSIS

Mr. Murphy argues that the Board decision should be reversed "so that the RO's rating decision stands." Appellant's Brief (Br.) at 2. In the alternative, he argues that remand is in order because the Board failed to provide adequate reasons or bases in that it "clearly did not review [the] record adequately enough to notice that the [AMC] increased [his] rating for chronic sinusitis to 30[%] just eight months prior to the Board decision." *Id.* at 6. He asserts that he was prejudiced by this error because, "if [his] chronic sinusitis is rated at 10[%], then [he] will have a combined rating of 90[%], thereby decreasing his disability compensation." *Id.* The Secretary responds that the

3

Board decision should be affirmed because "the Board is not precluded or estopped from overturning or reconsidering matters previously decided in non-final agency decisions," and the Board provided adequate reasons or bases for denying an evaluation in excess of 10%. Secretary's Br. at 6 (citing *McBurney v. Shinseki*, 23 Vet.App. 136, 139 (2009) and *Anderson v. Shinseki*, 22 Vet.App. 423, 426 (2009)). The Secretary also contends that, to the extent that the Board erred, Mr. Murphy has failed to carry his burden of demonstrating prejudice and "has not shown that a remand would serve a useful purpose." *Id.* at 7-8. The Court disagrees with the Secretary.

### A. Mischaracterization of the Issue on Appeal

Here, the Board remanded the veteran's claim in February 2010 for further development and readjudication by the RO. R. at 422-49. On remand, the AMC in June 2011 issued a rating decision awarding Mr. Murphy a 30% evaluation for sinusitis for the entire claim period (*see* R. at 63-80), payment of which began in July 2011 (R. at 66). The AMC also issued an SSOC in which it explained the grant of benefits and why he was not entitled to a 50% evaluation for sinusitis. R. at 87-92. Because the veteran's claim for an increased evaluation was the subject of a previous February 2010 Board remand, the grant of a 30% evaluation was not a complete grant of benefits, and Mr. Murphy did not thereafter withdraw the appeal (*see* R. at 92), the AMC returned the case to the Board. *See* 38 C.F.R. § 19.38 (2013) (providing that, after a Board remand, the agency of original jurisdiction (AOJ) will complete any additional development and, if any benefits sought on appeal remain denied, will issue an SSOC; "[f]ollowing the 30-day period allowed for a response to the [SSOC] . . . , the case will be returned to the Board for further appellate processing unless the appeal is withdrawn or review of the response to the [SSOC] results in the allowance of all benefits sought on appeal"). When the case was returned to the Board pursuant to § 19.38, the Board mischaracterized the issue on appeal as "[e]ntitlement to an increase in a 10[%] rating for sinusitis." R. at 3.

The Board's mischaracterization of the issue on appeal tainted its entire decision. Although the Board appears to have acknowledged that a decision was issued on remand, R. at 5, the Board overlooked the June 2011 award of a 30% evaluation and addressed the veteran's appeal as if his sinusitis were evaluated as 10% disabling. The Board's failure to correctly reflect the June 2011

4

adjudication and award by the AMC resulted in the Board considering an issue outside the scope of the appeal, applying the wrong law, and engaging in the wrong analysis.

Once the AMC granted this 30-year Air Force veteran a 30% evaluation for sinusitis, the only issue before the Board was his entitlement to a disability evaluation *in excess of 30*% for sinusitis. Therefore, it was outside the scope of the veteran's direct appeal for the Board to revisit the issue of entitlement to a disability evaluation less than 30%. *See AB v. Brown*, 6 Vet.App. 35, 39-40 (1993) (an RO decision awarding an increase from 10% to 30% in a "veteran's . . . rating did not fully resolve the administrative claim on appeal to the Board" and "the appeal initiated by the February 1988 NOD *remained pending for disposition by the* [*Board*] *as to the unresolved question of entitlement to a rating higher than 30%*" (emphasis added)).

To hold otherwise would leave the door open for a possible "chilling effect" in the administrative appeal process, whereby veterans might be afraid to seek higher disability evaluations on appeal, for fear of having already awarded benefits reduced by the Board during the appellate process. *See, e.g.*, 38 C.F.R. § 3.2600(d) (2013) (except in cases of clear and unmistakable error (CUE), a decision review officer "may not revise [an AOJ] decision in a manner that is less advantageous to the claimant than the decision under review").[2] Such a result would be wholly inconsistent with the non-adversarial claims system. *See Douglas v. Derwinski*, 2 Vet.App. 435, 439 (1992) (noting the "basic principle of the VA claims process that claims will be processed and adjudicated in an informal, nonadversarial atmosphere"); *see also Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009) ("The VA disability compensation system is not meant to be a trap for the unwary . . .").

Moreover, statutes, regulations, and caselaw clearly acknowledge that the appellant generally controls the scope of appellate review by "select[ing] the issues upon which he [or she] seeks to appeal to the Board." *Smith v. Brown*, 35 F.3d 1516, 1520 (Fed. Cir. 1994), *superceded on other grounds by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir.

---

[2]Decisions that were the product of CUE may be sua sponte revised, with adequate notice and opportunity for hearing pursuant to 38 C.F.R. § 3.103(b)(2), even if the revision is unfavorable to the claimant. *See* 38 C.F.R. §§ 3.105(a) (2013), 3.2600(e), 20.1400 (2013). In addition, certain individuals within VA may initiate an administrative appeal of an AOJ decision to resolve a conflict of opinion or a question pertaining to a benefits claim. *See* 38 C.F.R. §§ 19.50, 19.51 (2013). Neither process is implicated in this case.

2005).  Appellate review is "initiated" by a claimant or a claimant's representative filing an NOD and, after VA issues a Statement of the Case, that review is formalized by a claimant or a claimant's representative filing a Substantive Appeal.  38 U.S.C. § 7105(a); 38 C.F.R. § 19.4 (2013) (Board is to make decisions "on the questions presented on appeal").

## B.  Payment of Increased Disability Compensation

The Secretary attempts to excuse the Board's mischaracterization of the issue on appeal by citing *McBurney* and *Anderson* for the propositions that the Board is not bound by favorable findings made below and that the Board's jurisdictional statute does not limit its ability to review factual findings.  *See* Secretary's Br. at 6 (citing *McBurney*, 23 Vet.App. at 139 ("[T]he Board, as the final trier of fact, is not constrained by favorable determinations below."); *Anderson*, 22 Vet.App. at 428 (noting that 38 U.S.C. § 7104 "contains no limitations on the Board's ability to review favorable findings")).  What the Secretary fails to appreciate is that those cases, unlike Mr. Murphy's appeal, dealt with findings of fact and law by the AOJ that did not result in the award and payment of VA benefits.

An award of increased disability compensation, especially one of which the veteran has been notified and begun to receive payment, differs from a favorable finding of fact or law.  Here, the record shows that Mr. Murphy began to receive increased disability compensation payments within 15 days of the July 1, 2011, letter that notified him of the increased evaluation for sinusitis.  R. at 66 (referencing VA Form 21-8764).  An award of disability compensation or an increase in disability compensation, unlike a favorable finding of fact or law that does not itself confer entitlement to benefits, carries with it substantive rights and procedural safeguards that cannot be easily discarded in the name of de novo Board adjudication.  *See* 38 C.F.R. §§ 3.103(b)(2), 3.105(e); *cf. Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009) ("[D]isability benefits are a protected property interest and may not be discontinued without due process of law.").  Those safeguards exist, in part, to ensure that veterans who have come to rely on the payment of disability compensation at a particular level are not deprived of that income without being duly notified of a prospective reduction and being given a meaningful opportunity to contest that reduction.  *See Reizenstein v. Peake*, 22 Vet.App. 202, 209 (2008), *aff'd* 583 F.3d 1331 (Fed. Cir. 2009); *O'Connell v. Nicholson*, 21 Vet.App. 89, 93 (2007).

6

In other words, veterans like Mr. Murphy, who have been awarded increased compensation and have begun to receive payment pursuant to that award by the AOJ, have a reliance interest in that compensation that does not arise when the AOJ makes a mere favorable finding of fact or law that does not result in an award of benefits. *Cf. Singleton v. Shinseki*, 23 Vet.App. 376, 380 (2010) (contrasting veterans who are receiving disability compensation and have "adjusted to having that income for ongoing expenses" with veterans who are not receiving such compensation and for whom "such reliance is not present"), *aff'd*, 659 F.3d 1332 (Fed. Cir. 2011). Therefore, the Secretary's reliance on *McBurney* and *Anderson*–cases involving favorable findings by the RO that did not, in and of themselves, result in an award of benefits–is misplaced. *See McBurney*, 23 Vet.App. at 139-40 (Board not bound by stipulation, agreed to by the RO, that the veteran was "forcibly detained" by a hostile force and thus considered a former prisoner of war under 38 U.S.C. § 101(32)); *Anderson*, 22 Vet.App. at 427-28 (Board not bound by decision review officer's findings that the rating schedule did not adequately account for the veteran's symptoms of bilateral hearing loss and that his hearing disability caused marked interference with employment, requiring referral for extraschedular consideration pursuant to 38 C.F.R. § 3.321(b)(1)).[3]

Unlike *McBurney* and *Anderson*, the case at hand presents a reduction in disability evaluation by the Board and, consequently, a reduction in compensation received by the veteran. *See Dofflemyer v. Derwinski*, 2 Vet.App. 277, 279-82 (1992) (holding that the Board erred in mischaracterizing the issue as entitlement to an increased evaluation rather than whether reduction was proper, thereby failing to observe the law applicable to reductions); *Peyton v. Derwinski*, 1 Vet.App. 282, 286-87 (1991) (same). In such a situation–i.e., "[w]here [a] reduction in evaluation of a service connected disability . . . is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made"–notice and an opportunity to present additional evidence must be provided to the veteran in accordance with 38 C.F.R. § 3.105(e). "[T]he plain meaning of § 3.105(e) is that notice is warranted only when there

---

[3]This is not to say that the Board may not review a properly appealed AOJ decision and revise the AOJ's findings of fact favorable to the claimant, as it did in *McBurney* and *Anderson*. *See* 38 C.F.R. § 3.104(a) (2013)("A final and binding agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities . . . ."). However, that review and revision authority on direct appeal simply does not extend to review of the AOJ's award of benefits.

is a reduction in 'compensation payments currently being made.'" *Tatum v. Shinseki*, 24 Vet.App. 139, 143 (2010) (recognizing that § 3.105(e) notice applies only to the reduction of running awards and holding that such notice provisions were not applicable because Mr. Tatum "was not receiving compensation at the time the staged rating was assigned"); *see also O'Connell, supra*.

The critical facts in this case are that, shortly after the award of the 30% evaluation, the veteran began to receive increased disability compensation from that award, and he was in receipt of that compensation when the Board issued its decision that effectively reduced the assigned evaluation from 30% to 10%. *See* R. at 66. Because Mr. Murphy was receiving compensation at the 30% level at the time the Board assigned the lower 10% evaluation, the procedural requirements for reducing previously assigned disability evaluations were applicable, including the notice provisions of § 3.105(e). However, even had the Board been convinced that reduction was the correct course, it would have had no authority to undertake such action in the first instance. *See* 38 U.S.C. § 7104(a) ("All questions in a matter which . . . is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary."); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1346 (Fed. Cir. 2003).

The situation here differs fundamentally from staged-rating cases in which this Court has held that § 3.105(e) did not apply. For example, in *O'Connell*, the Court determined that § 3.105(e) does not apply "in the context of the assignment of a staged rating by the Board where the veteran's disability rating is not reduced, for any period of time, to a level below that which was in effect when he appealed to the Board." 21 Vet.App. at 94. The Court explained that in this context, "there is no diminished expectation with which to be concerned and no reduction in benefits for Mr. O'Connell to contest." *Id*. at 93; *see also Reizenstein*, 583 F.3d at 1337 (accepting the Secretary's argument that 38 C.F.R. § 3.343 (2009) does not apply in the context of staged ratings); *Singleton*, 23 Vet.App. at 380 (holding that 38 C.F.R. § 3.344 (2009) does not apply in the context of staged ratings).

Unlike in *O'Connell*, the Board decision here had the effect of reducing Mr. Murphy's disability evaluation to 10%, a level below that which was in effect when his appeal was returned to the Board following the June 2011 AMC decision. Because Mr. Murphy had begun receiving payment of the increased disability compensation awarded by the AMC at the time that the Board issued its decision, he had a reliance interest in the continued payment of disability compensation

at that level. *See Reizenstein*, *Singleton*, and *O'Connell*, all *supra*. Therefore, the Board's failure to abide by the procedural requirements of § 3.105(e) deprived Mr. Murphy of the regulatory process that VA created to help veterans adjust to a reduction in disability compensation payments and to submit evidence or argument to contest such an action. *See O'Connell*, *supra*. As a result, Mr. Murphy was deprived of a meaningful opportunity to present evidence to contest the Board's reduction, in violation of § 3.105(e). *See Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990) ("The [Board] is not free to ignore regulations which the VA has adopted.").

### C. Substantive Regulatory Requirements for Reduction

In addition to the Board's errors in mischaracterizing the issue on appeal and failing to ensure that Mr. Murphy received the pre-reduction process to which he was entitled, the Board also erred in effectively reducing his 30% evaluation without complying with the substantive regulatory requirements applicable in every reduction case. For example, the Board did not make the findings that an AOJ would be required to make to justify a reduction in a disability evaluation, including whether his sinusitis improved at some point since June 2003 or whether such improvement indicated an improvement, if it existed, in his ability to function under the ordinary conditions of life and work. *See Brown v. Brown*, 5 Vet.App. 413, 421 (1993) (requiring VA, "in any rating-reduction case," to determine (1) "based upon review of the entire recorded history of the condition, whether the evidence reflects an actual change in the disability"; (2) "whether the examination reports reflecting such change are based upon thorough examinations"; and (3) whether any improvement "actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work" (citing 38 C.F.R. §§ 4.1, 4.2, 4.10, and 4.13 (1992))); *see also Faust v. West*, 13 Vet.App. 342, 349 (2000) (summarizing the requirements that VA must follow in all reduction cases, "regardless of the rating level or the length of time that the rating has been in effect"). This, too, was error. *See Brown*, *supra*.

### III. CONCLUSION

Because the Board mischaracterized the issue on appeal, addressed an issue outside the scope of Mr. Murphy's appeal, and improperly reduced his disability evaluation for sinusitis without affording him one review on appeal and without complying with the procedural and substantive

regulatory requirements for reduction, the Board's decision is void ab initio. *See Kitchens v. Brown*, 7 Vet.App. 320, 325 (1995) ("Where . . . the Court finds that the [Board] has reduced a veteran's rating without observing applicable laws and regulation, such a rating is void ab initio and the Court will set it as aside as not in accordance with law."). Therefore, the Court will reverse the Board decision, order that the 30% evaluation be reinstated, and order that the Board consider the issue that was the subject of the veteran's appeal, entitlement to an evaluation in excess of 30% for sinusitis. *See Murray v. Shinseki*, 24 Vet.App. 420, 428 (2011)*; Schafrath v. Derwinski*, 1 Vet.App. 589, 595 (1991).

Upon consideration of the foregoing, the Board's February 27, 2012, decision denying a disability evaluation in excess of 10% for service-connected sinusitis is REVERSED, and that matter is REMANDED for reinstatement of the 30% evaluation for that condition and consideration of entitlement to an evaluation in excess of 30%.